**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TONY LEE and JAMES MORGAN, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-11-1334 |
| | § | |
| WELLS FARGO BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This suit challenges Wells Fargo's efforts to foreclose on a home.  Tony Lee owned the home and signed the mortgage.  James Morgan later entered into an earnest money contract with Lee to purchase the home.  Both sued Wells Fargo and its substitute trustee, Jack Palmer, in state court to stop the pending foreclosure sale.  The defendants timely removed based on diversity of citizenship.

This court previously dismissed Lee's claims because of his failure to prosecute and comply with court orders.  Morgan's first amended complaint asserts claims only against Wells Fargo.  Wells Fargo has moved to dismiss those claims under Federal Rule of Civil Procedure 12(b)(6) and for summary judgment under Rule 56.  Wells Fargo also requests attorney's fees under the deed of trust and the Texas Fair Debt Collection Practices Act (TDCA).  Morgan has not responded.

Based on the pleadings, the motion, the record evidence, and the relevant law, Wells Fargo's motion to dismiss or for summary judgment, (Docket Entry No. 27), is granted, and Wells Fargo's request for attorney's fees and costs is denied under the deed of trust and granted under the TDCA.  Final judgment is entered by separate order.  The reasons for these rulings are explained below.

## I.    Background

On November 27, 2007, Lee purchased the home located at 12915 Lariat Canyon Ct. in Katy, Texas.  (Docket Entry No. 18, ¶ 6).  On the same day, Lee took out a mortgage loan from Boehck Mortgage and executed a deed of trust and a promissory note.  (Docket Entry No. 27, Exs. A, B).  The deed of trust named Mortgage Electronic Registration Systems, Inc. (MERS) as the nominee for Boehck.  (*Id.*, Ex. B).

In October 2010, Lee applied for a loan modification under the federal Home Affordable Modification Program (HAMP).  (Docket Entry No. 18, ¶ 10).  On October 11, 2010, MERS assigned the deed of trust to Wells Fargo.  (Docket Entry No. 27, Ex. C).

On March 22, 2011, Lee entered into an earnest money contract with Morgan.  The contract provided that Morgan would pay Lee $10,000 in cash and take out a $195,000 mortgage.  Morgan alleges that he has paid Lee $76,000.  (Docket Entry No. 18, ¶ 12).  Morgan also states that, sometime before April 5, 2011, he and Lee informed Wells Fargo about the earnest money contract.  (*Id.*, ¶ 13).

On April 4, 2011, Lee and Morgan obtained a temporary restraining order in state court enjoining Wells Fargo from foreclosing on the property.  (*Id.*, ¶ 14).  Morgan alleges that Wells Fargo sold the property at foreclosure on April 5, 2011.  (*Id.*, ¶ 15).  Wells Fargo has submitted evidence that it did not sell the property at that time.  On April 7, 2011, Wells Fargo removed the case to federal court.

On September 8, 2011, this court held an initial pretrial conference.  Morgan and Wells Fargo appeared, but Lee was absent.  (Docket Entry No. 12).  The foreclosure was concluded and the home was sold on January 3, 2012.  (Docket Entry No. 27, Ex. D).

On May 18, 2012, the court ordered the parties to appear at a status and scheduling pretrial conference and stated that if Lee failed to appear, his claims would be dismissed for want of prosecution. (Docket Entry No. 13). On June 27, 2012, the court held the hearing. Morgan and Wells Fargo appeared, but Lee was again absent. The court dismissed Lee's claims. (Docket Entry No. 17).

Morgan's amended complaint asserts claims against Wells Fargo for wrongful acceleration and foreclosure; breach of contract; tortious interference with an existing contract; negligence; violations of the Texas Deceptive Trade Practices Act (DTPA); and violations of the Texas Fair Debt Collection Practices Act (TDCA).[1] Wells Fargo has moved to dismiss under Rule 12(b)(6) and for summary judgment. Wells Fargo has submitted the following summary judgment evidence: Lee's mortgage note with Boehck Mortgage, (Docket Entry No. 27, Ex. A); Lee's deed of trust with MERS, as nominee for Boehck Mortgage, (*id.*, Ex. B); the October 12, 2012 assignment of the note and deed of trust from MERS, as nominee for Boehck Mortgage to Wells Fargo, (*id.*, Ex. C); the trustee's deed showing that the property was sold at foreclosure on January 3, 2012, (*id.*, Ex. D); and an excerpt of the HAMP guidelines from the MHA handbook, (*id.*, Ex. F). Morgan has not responded to Wells Fargo's motion to dismiss and for summary judgment.

## II.    The Legal Standards

### A.    Dismissal Motions Under Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and

---

[1] On July 18, 2012, Morgan filed an amended complaint against Wells Fargo naming Morgan and Lee as the plaintiffs. The complaint is signed by Morgan but not by Lee. (Docket Entry No. 18). As stated in this court's previous order, Lee has been dismissed from this case.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. 544).   The Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice.  *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)).  However, a plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007)

4

(per curiam) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))).

### B.    Summary-Judgment Motions Under Rule 56

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).  If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant

must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## III.   Analysis

### A.    The Claim for Wrongful Acceleration and Foreclosure

Morgan alleges that Wells Fargo wrongfully accelerated the mortgage note and foreclosed on Lee's home. Under Texas common law, a debtor may recover for wrongful foreclosure when the party has suffered a loss or injury due to inconsistencies or irregularities in the foreclosure process. *See Wieler v. United Sav. Ass'n of Tex.*, 887 S.W.2d 155, 158 (Tex. App.—Texarkana 1994, writ denied); *see also Cuauhtli v. Chase Home Finance LLC*, 2007 WL 548759, at *4 (N.D. Tex. Feb. 22, 2007). A debtor may recover damages on a wrongful foreclosure theory only if the lender (1) fails to comply with statutory or contractual terms, or (2) complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings. *Houston Omni USA Co. v. Southtrust Bank Corp.*, 2009 WL 1161860, at *6 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *First State Bank v. Keilman*, 851 S.W.2d 914, 921–22 (Tex. App.—Austin 1993, no

writ).  Section 51.002 of the Texas Property Code governs a foreclosure sale of real property pursuant to a deed of trust and provides specific requirements as to the time and place a foreclosure sale must be held, as well as to the notices that must be given before the sale.  *See, e.g.*, TEX. PROP. CODE § 51.002(b) (notice of sale); *id.*, § 51.002(e).

Morgan alleges that Wells Fargo lacked authority to accelerate or to foreclose because it did not hold the note.  Texas law allows a mortgage note to be enforced by a holder in due course.  TEX. BUS. & COM. CODE § 3.301; *JWD, Inc. v. Fed. Ins. Co.*, 806 S.W.2d 327, 329–30 (Tex. App.—Austin 1991, no writ).  Morgan contends that MERS was not the note's holder and so it could not have transferred or assigned the note.  (Docket Entry No. 18, ¶ 18).

Wells Fargo moves for summary judgment on the basis that it is the owner and holder of the note.  Wells Fargo has attached as exhibits to its summary-judgment motion Lee's mortgage note with Boehck Mortgage, (Docket Entry No. 27, Ex. A); Lee's deed of trust with MERS as nominee for Boehck Mortgage, (i*d*., Ex. B); and an October 12, 2012 assignment of the note and deed of trust from MERS, as nominee for Boehck Mortgage, to Wells Fargo, (*id*., Ex. C).  Morgan is correct that MERS was named as the nominee holder of the deed of trust but not of the promissory note.  Courts applying Texas law, however, have uniformly held that "a transfer of an obligation secured by a note also transfers the note."  *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 623 (N.D. Tex. 2011); *see also Bierwirth v. BAC Home Loans Servicing, L.P.*, 2012 WL 3793190, at *4 (Tex. App.—Austin  Aug. 30, 2012) ("Although Bierwirth's note containing the express right to transfer did not identify MERS, Bierwirth's deed of trust did identify MERS, and because the note and deed of trust must be read together when evaluating their provisions, MERS had the authority to assign the note and the deed of trust.").  Morgan has not pointed to any evidence creating a genuine fact

dispute as to whether, as assignee and holder of the note and deed of trust, Wells Fargo had authority to accelerate the note and foreclose on Lee's home.

Morgan alleges that HAMP guidelines prohibited Wells Fargo from foreclosing on the property while the loan modification application was pending.  (Docket Entry No. 18, ¶¶  19–20).  But the law is clear that there is no private right of action under HAMP.  *Pennington v. HSBC Bank USA, N.A.*, 2012 WL 4513333, at *2 (5th Cir. Oct. 3, 2012); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 559 n. 4 (7th Cir. 2012) ("Courts have uniformly rejected these claims because HAMP does not create a private federal right of action for borrowers against servicers.").  Even if a private right of action did exist for Lee to enforce the HAMP guidelines, Morgan would lack standing to sue on Lee's behalf.  Morgan did not own the property, and he does not allege that he had submitted a HAMP loan modification application.

Morgan also alleges that Wells Fargo violated the state court's temporary restraining order by proceeding with the foreclosure sale.  (Docket Entry No. 18, ¶ 21).[2]  The state court's April 4, 2011 temporary restraining order expired no later than April 18, 2011.  Tex. R. Civ. P. 680 (stating that a temporary restraining order "shall expire by its terms within such time after signing, not to exceed fourteen days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period.").  Morgan has not alleged or pointed to evidence showing that a court issued a subsequent temporary restraining order or preliminary injunction.  Wells Fargo has provided summary-judgment evidence that it foreclosed on Lee's home on January

---

[2] This court takes judicial notice of the April 4, 2011 temporary restraining order issued in *Lee v. Wells Fargo Bank, NA*, No. 2011-20546 (333rd Dist. Ct., Harris County, Tex. Apr. 4, 2011).  (Docket Entry No. 1, Ex. 3).

3, 2012 — not on April 5, 2011 as Morgan alleges.  (Docket Entry No. 27, Ex. E).  Morgan has not

pointed to evidence creating a genuine fact dispute material to determining whether Wells Fargo

foreclosed on Lee's home in violation of a state court order.  Summary judgment is granted as to that

claim.

> **B.**      **The Claim for Breach of Contract**

Morgan alleges that Wells Fargo's actions in accelerating the note, foreclosing, "ignoring"

the earnest money contract, and violating the state court's temporary restraining order breached the

note and deed of trust.  Morgan contends that he may enforce Lee's note and deed of trust because

he is a third-party beneficiary to both contracts.  (Docket Entry No. 18, ¶ 24).

"[T]he presumption in contract law is against finding that a stranger to a contract is a third

party beneficiary, so as to confer legal standing to enforce the contract's stated obligations, even if

the contract expressly states that one of the signatories may have obligations to that stranger.  *In re

Bayer Materialscience, LLC*, 265 S.W.3d 452, 456 (Tex. App.—Houston [1 Dist.], 2007, pet.

denied) (internal citations omitted) (citing *MCI Telecomm. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d

647, 652 (Tex. 1999)).  "A party is presumed to contract only for its own benefit; any intent to

benefit a third party must be clearly apparent."  *Id.*

Wells Fargo has moved for summary judgment on the basis that Morgan is not a third-party

beneficiary to Lee's mortgage note and deed of trust with Boehck Mortgage.  The note and deed of

trust do not mention Morgan or otherwise indicate that they were executed for Morgan's benefit.

Morgan does not identify the provisions that Wells Fargo allegedly breached or the evidence

showing such a breach.  Summary judgment is granted dismissing Morgan's breach-of-contract

claims.

### C.     The Claim for Tortious Interference with Contract

Morgan alleges that by selling the home at foreclosure, Wells Fargo interfered with his earnest money contract and prevented him from completing the purchase of Lee's home.  (Docket Entry No. 18, ¶ 28).  "Tortious interference with a contract occurs when a person intentionally and improperly interferes with the performance of a contract with a third party."  *Mackey v. U.P. Enterprises, Inc.*, 935 S.W.2d 446, 458 (Tex. App.—Tyler 1996, no writ).  The elements of a cause of action for tortious interference with contractual relations are: (1) a contract subject to interference; (2) an act of interference that was willful and intentional; (3) the act was a proximate cause of a plaintiff's damages; and (4) actual damage or loss occurred.  *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 926 (Tex. 1993); *John Masek Corp. v. Davis*, 848 S.W.2d 170, 175 (Tex. App.—Houston [1st Dist.] 1992, writ denied).  Texas law protects existing and prospective contracts from interference.  *Davis*, 848 S.W.2d at 175.

Wells Fargo argues that because Lee defaulted on his loan obligation, it had authority under the note and deed of trust to foreclose on his home.  A party is privileged to interfere with another's contract when either of the following is true: (1) the interference is done in a *bona fide* exercise of the interfering party's rights; or (2) the interfering party has an interest in the subject matter equal or superior to the other party's interest.  *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex. 1989).  Even a doubtful claim of a legal right can justify interference with a contract, as long as it asserted a "colorable legal right."  *Hubbard v. Dalbosco*, 888 S.W.2d 224, 229 (Tex. App.—Houston [1st Dist.] 1994, writ denied).  It is undisputed that Lee had defaulted on the mortgage at the time that Wells Fargo foreclosed.  The deed of trust gives Wells Fargo the "power of sale" to enforce its interests when a borrower is in default and fails to cure.  (Docket Entry No. 27, Ex. D, ¶ 22).

10

Section 51.002 of the Texas Property Code also authorizes lenders to use nonjudicial foreclosure sales when borrowers have defaulted on their mortgages.  The uncontested record evidence shows that, even if Wells Fargo's sale of Lee's home interfered with Morgan's earnest money contract with Lee, the sale occurred in the *bona fide* exercise of Wells Fargo's rights and that Wells Fargo had an interest in foreclosing equal or superior to Morgan's interest in the earnest money contract. Summary judgment is granted dismissing Morgan's claim of tortious interference with  contract.

### D.      The Claim for Negligence

Morgan alleges that Wells Fargo acted negligently.  (Docket Entry No. 18, ¶ 32).  To state a negligence claim under Texas law, a plaintiff must show: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages caused by the breach.  *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).  Wells Fargo moves to dismiss or for summary judgment.

The complaint's negligence section includes only a formulaic recitation of the elements for stating a negligence claim.  This is insufficient to state a claim under Rule 12(b)(6).  *Iqbal*, 129 S.Ct. at 1949 (citation omitted).  The summary-judgment evidence does not provide any basis for an inference that Wells Fargo owed Morgan — with whom it lacked a preexisting contract or lending relationship — a legal duty, which it breached.  Under Texas law, "there is no special relationship between a mortgagor and mortgagee that would give rise to a stand-alone duty of good faith and fair dealing."  *Milton v. U.S. Bank Nat. Ass'n*, 2013 WL 264561 (5th Cir. Jan. 18, 2013).  Summary judgment is granted dismissing Morgan's negligence claim.

### E.      The Claim Under the Texas Deceptive Trade Practices Act (DTPA)

Morgan alleges that Wells Fargo violated the DTPA by engaging in false, misleading and deceptive acts and practices under § 17.46 of the Texas Business and Commerce Code.  There are

11

three elements to a DTPA claim: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing TEX. BUS. & COM. CODE § 17.50(a)(1)).   To be a "consumer" under the DTPA, a person "must seek or acquire goods or services by lease or purchase" and "the goods or services sought or acquired must form the basis of [that person's] complaint." *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 159 (Tex. App.—Fort Worth 2007, pet. denied).   "If either requirement is lacking, the party must look to the common law or some other statutory provision for redress." *Id.*

Wells Fargo has moved to dismiss or for summary judgment on Morgan's DTPA claims. Although Morgan's complaint contains a generic list of the activities that are prohibited under the DTPA, he does not allege which of Wells Fargo's actions violated which sections of the statute. That is sufficient for dismissal.   Even if this court examined the summary-judgment record, there is undisputed evidence that Wells Fargo was authorized under Texas law and Lee's mortgage note and deed of trust to foreclose on Lee's home.   The record evidence also shows that Morgan is  not a consumer under the DTPA.   He has not alleged or pointed to any evidence showing that he sought to buy or lease goods or services from Wells Fargo.   Summary judgment is granted dismissing Morgan's DTPA claims.

### F.    The Claim Under the Texas Fair Debt Collection Practices Act (TDCA)

Morgan alleges, among other things, that Wells Fargo violated the TDCA by negligently understaffing its loan-modification department; repeatedly asking for documents from Lee, TEX. FIN. CODE § 392.302; accelerating the note and foreclosing on the property without proper authority; threatening to take actions prohibited by law, including nonjudicial foreclosure, TEX. FIN. CODE §

392.301; and misrepresenting Lee's consumer debt status in a judicial proceeding, TEX. FIN. CODE § 392.304.

Wells Fargo moves for summary judgment on the basis that Morgan is not a "consumer" under the TDCA.  The TDCA defines a "consumer" as "an individual who has a consumer debt." TEX. FIN. CODE § 392.001(1).  A "consumer debt" is "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." § 392.001(2).  A "debt collection" means "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due to a creditor." § 392.001(5).  A "debt collector" refers to "a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collective system, device, or scheme intended to be used to collect consumer debts." § 392.001(6).  Courts have held that certain nondebtors may assert TDCA claims that arise out of the "debtor/creditor relationship." *See Brush v. Wells Fargo Bank, N.A.*, — F. Supp. 2d —, 2012 WL 5989204, at *19 (S.D. Tex. Nov. 29, 2012); *Prophet v. Myers,* 2009 WL 1437799, at *5 (S.D. Tex. May 21, 2009). "Any person against whom the prohibited acts are committed may maintain an action for actual damages sustained as a result of those violations." *Campbell v. Beneficial Finance Co. of Dallas*, 616 S.W.2d 373, 375 (Tex. App.—Texarkana 1981, no writ).  This court must evaluate each of Morgan's claims  individually to decide whether he has a cause of action under the TDCA.

Morgan alleges that Wells Fargo's actions, including its nonjudicial foreclosure of Lee's home, violated the TDCA because "Wells Fargo did not have the right or authority" to foreclose. (Docket Entry No. 18, ¶ 48). Section 392.301(a)(7) of the Texas Finance Code prohibits debt collectors from "threatening that nonpayment of a consumer debt will result in the seizure,

13

repossession, or sale of the person's property without proper court proceedings."  TEX. FIN. CODE § 392.301(a)(7).  The undisputed record evidence shows that Wells Fargo intended to use a nonjudicial foreclosure process according to express powers granted in the deed of trust.  *See also* TEX. PROP. CODE § 51.002 (permitting the nonjudicial sale of real property under contract lien).  The TDCA also states that § 392.301(a) does not prevent a debt collector from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings."  TEX. FIN. CODE § 392.301(b)(3).  Wells Fargo's representation that it intended to use the nonjudicial eviction procedure permitted under Texas law is not actionable under the TDCA. In addition, Morgan has no claim against Wells Fargo under  § 392.301(a)(7) because that section permits a person to sue a lender for threatening that nonpayment of a consumer debt will result in the sale of "the person's property."  Lee, not Morgan, owned the property.  Summary judgment is granted dismissing Morgan's § 392.301(a)(7) claim.

Morgan also alleges that "Wells Fargo asked and re-asked for documents from Lee, with the intended effect of abusing and harassing Lee."   (Docket Entry No. 18, ¶ 46).  Section 392.302 of the Texas Finance Code states that a debt collector may not "oppress, harass, or abuse a person" by, among other things, "causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person as the called number."  TEX. FIN. CODE § 392.302.  Morgan alleges that Wells Fargo repeatedly asked Lee for documents.  But Morgan does not contend that he was the target of Wells Fargo's allegedly abusive and harassing actions. Morgan's claim fails as a matter of law because he was not the person against whom Wells Fargo's abusive actions were committed.  Summary judgment is granted dismissing Morgan's  § 392.302 claim.

Section 392.304 of the TDCA prohibits a debt collector from using "in debt collection" certain practices that involve "fraudulent, deceptive, or misleading representations." TEX. FIN. CODE § 392.304(a).  Morgan alleges that Wells Fargo violated § 392.304(a)(8) by "misrepresenting the consumer debt's status in a judicial or government proceeding."  TEX. FIN. CODE § 392.304(a)(8). Morgan does not make any statements about, or point to any evidence showing how, Wells Fargo misrepresented the status of Lee's debt in a particular judicial or government proceeding any misrepresentation occurred.  Summary judgment is granted dismissing Morgan's  § 392.304(a) claim.

Morgan also alleges that Wells Fargo violated the TDCA by accepting "an application for modification without the intention of following through on the application," and because it "negligently or intentionally understaffed and undertrained its modification department with the intended effect of disregarding Lee's application for modification."  (Docket Entry No. 18, ¶ 45). Morgan does not state which TDCA provisions Wells Fargo's actions allegedly violated.  Morgan's allegations relate to the loan modification process and not to Wells Fargo's attempts to collect Lee's debt.  Even if Wells Fargo's actions on Lee's loan modification application could be shown to violate the TDCA, Lee — and not Morgan — is the only proper party to assert such claims. Summary judgment is granted dismissing Morgan's TDCA claims arising out of Wells Fargo's loan modification practices.

## IV.    Wells Fargo's Request for Attorney's Fees

Wells Fargo requests attorney's fees from Morgan under the deed of trust and the TDCA. Attorney's fees are generally recoverable only if authorized by statute or contract.  *Kessler v. Penn. Nat.'l Mut. Cas. Ins. Co.*, 531 F.2d 248, 255 (5th Cir.1976); *Tony Gullo Motors I, L.P. v. Chapa*, 212

15

S.W.3d 299, 311 (Tex. 2006).  Wells Fargo has submitted an affidavit showing that it has incurred $27,650 in attorneys' fees and costs.

In support of its request for attorney's fees, Wells Fargo points to section 9 of Lee's deed of trust, which entitles Wells Fargo to "do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument. . . ." (Docket Entry No. 27, Ex. B, § 9).  These actions "can include, but are not limited to . . . paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding." (*Id.*).  The Fifth Circuit has held that "it is clear that the Deed of Trust contemplates entitlement to attorney's fees incurred to protect [the lender's] interest in the property or rights under the Deed of Trust." *In re Velazquez*, 660 F.3d 893, 899 (5th Cir. 2011) (interpreting a deed of trust containing identical provisions to the one in this case). Although the Fifth Circuit's *Valazquez* decision concerned the recovery of attorneys' fees in the bankruptcy context, other courts have found that an attorneys' fee provision in a deed of trust applies when, as here, the plaintiff sought to "enjoin defendants from selling or attempting to sell the property, an action that, if successful, could have permanently affected defendants' ability to enforce the terms of the note and deed of trust through foreclosure and eviction if plaintiff persisted in her default." *Richardson v. Wells Fargo Bank, N.A.*, 2012 WL 6028912, at *3 (N.D. Tex. Dec. 3, 2012).

But Wells Fargo has not shown that, under the deed of trust, it is entitled to collect its attorney's fees from Morgan.  Section 9 of the deed of trust states that "[a]ny amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument." (Docket Entry No. 27, Ex. B, ¶ 9).  Morgan was not a party to the deed of trust and is not the "borrower."  Wells Fargo's request for attorney's fees under the deed of trust is denied.

Wells Fargo also requests attorney's fees under the TDCA.  Under § 392.403(c) of the Texas Finance Code, "[o]n a finding by a court that an action under this section was brought in bad faith and for purposes of harassment, the court shall award defendant attorney's fees reasonably related to the work performed and costs."  TEX. FIN. CODE § 392.403(c); *see also Kan v. OneWest Bank, FSB*, 823 F. Supp. 2d 464, 471 (W.D. Tex. 2011) (awarding attorney's fees to the defendant because the "complaint does not make any substantial claims under the Act" and "simply references the 'laundry list' section of the Act, without specifically identifying how [the defendant] is supposed to have violated the act, or what the alleged violation might be.").

Although this court gives some leeway to Morgan as a *pro se* plaintiff, this court finds that Morgan's TDCA claims were brought in bad faith and for the purposes of harassment.  Morgan's TDCA claims were frivolous.  The TDCA section of Morgan's complaint consists of vague and conclusory statements that Wells Fargo violated various provisions of the TDCA.  Morgan's complaint is devoid of any factual allegations supporting those claims.  Morgan was a stranger to the note and deed of trust that Lee executed and that Wells Fargo held.  According to Morgan's own complaint, he was not the target of any of Wells Fargo's efforts to collect Lee's debt.  That Morgan's TDCA claims were brought in bad faith is also supported by the fact that Morgan did not file a response to Wells Fargo's motion to dismiss and for summary judgment.

Wells Fargo's request for attorney's fees is granted as to the TDCA claim asserted by Morgan.  Wells Fargo must segregate and submit evidence of the fees reasonably attributable to that claim, separating it from Lee's claims and Morgan's other claims.  As is frequently the case with *pro se* plaintiffs, any award of fees will be adjusted to take that status into account.

17

## V.      Conclusion

For the reasons stated above, Wells Fargo's motion to dismiss or for summary judgment, (Docket Entry No. 27), is granted.  Wells Fargo's request for attorney's fees and costs is denied in part and granted in part.  Final judgment is entered by separate order.  Wells Fargo may submit a revised request for fees in accordance with Rule 54(d) of the Federal Rules of Civil Procedure.

SIGNED on February 27, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge